IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Tyrone Kelley, #323630 | ) | |
| | ) | Civil Action No. 8:08-2147-CMC-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Wayne Yates; Sgt. Dane | ) | |
| Garrick; and Joe Kenneth | ) | |
| Tolbert, Jr., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, a state prisoner proceeding *pro se*, alleges his constitutional rights have been violated pursuant to 42 U.S.C.§ 1983. This matter is before the Court on the Defendants' Motion for Summary Judgment. (Dkt. # 51.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The Plaintiff brought this action on June 10, 2008, seeking damages for alleged civil rights violations and state law claims. On May 1, 2009, the Defendants filed a motion for summary judgment. By order filed May 7, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.

On June 9, 2009, the Plaintiff filed a response to the Defendants' Summary Judgment

Motion.

## **FACTS PRESENTED**

The Plaintiff is a state inmate currently incarcerated at the Campbell Work Release

facility. (Dkt. # 19.) In his complaint, the Plaintiff states that on March 1, 2007, he was

a passenger in a car driven by Nathan Eisenhard.[1] (Compl. at 6.)[2] The car was stopped

for driving in the rain without headlights by Officer D.J. Wilson of the Winnsboro

Department of Public Safety ("WDPS"). *Id.* The Plaintiff alleges that the officer stated "he

smelled a scent coming from the [car]." *Id.*[3] The Plaintiff states that by this time, the

Defendant Chief of Police Wayne Yates had arrived on the scene and Eisenhard was

asked to exit the car. *Id.*[4] Eisenhard was searched and, after nothing was found on him,

the officers searched the Plaintiff and the car. *Id.* The Plaintiff alleges that the officers

again did not find anything, and he and Eisenhard were handcuffed and searched a

---

[1] The undersigned notes that the driver's name is spelled by the Plaintiff in the complaint as Isenhower, but it appears that his name is actually Eisenhard.

[2] These factual allegations are taken from the Plaintiff's complaint filed on June 10, 2008. The Plaintiff filed an amended complaint on July 15, 2008, in which he added two defendants, Garrick and Tolbert, and set forth in a list the claims that he was pursuing in this action. (Am. Compl.)

[3] Although not identified by name in the Complaint, this officer is identified by both parties as D.J. Wilson in their memoranda. (Pl.'s Mem. Opp. Summ. J. Mot. at 3; Defs.' Mem. Supp. Summ. J. Mot. at 2.)

[4] In his memorandum opposing summary judgment, the Plaintiff states that Officer Wilson did not state that he "smelled something funny" until after the Defendant Chief Yates had arrived and had a conversation with Wilson. (Pl.'s Mem. Opp. Summ. J. Mot. at 3.)

second time. (Compl. at 6.)  He alleges the officers then placed him and Eisenhard in a patrol car and taken to the Fairfield Inn where officers were conducting a drug bust.  *Id.*

The Plaintiff alleges an officer took Eisenhard into the motel room and moments later  they reappeared and the Plaintiff was taken from the patrol car.  He alleges that the Defendants Garrick[5] and Tolbert and Officer  Westfall made rude and racial remarks and searched him a third time and still found nothing.  (Compl. at 7.)  He alleges Eisenhard was searched again and the officers found crack and powder cocaine in his underwear. *Id.*  The Plaintiff alleges the officers told Eisenhard  "he was free to go and locked [the Plaintiff] up for PWID of both drugs found on [Eisenhard]."  (Compl. at 7.)

The Plaintiff was taken to the Fairfield County Jail and served with four warrants for possession with intent to distribute ("PWID") powder cocaine, PWID crack cocaine, and two for PWID cocaine within close proximity of a school, which were all issued by the City Judge Faye Johnson.  (Compl. at 7.)[6]  He alleges his money was taken from him and he was told his bond was $100,000 by City Judge Susan Cambell.  *Id*.

At his preliminary hearing on March 26, 2007, the Plaintiff alleges that the officer told the judge that the reason Esienhard had been released and the Plaintiff charged was that Eisenhard sold "weed not crack or powder cocaine."  *Id.*  The Plaintiff alleges that

---

[5]The Plaintiff also appears to have misspelled the Defendant Dane Garrick's name in the complaint as "Dain Garret."

[6]In his memorandum opposing the Defendants' Motion for Summary Judgment, the Plaintiff points out that the arrest warrants were based upon an affidavit from the Defendant Garrick who was not present at the traffic stop.

Judge Vannesa Holland found this to be ridiculous and dismissed the charges.  (Compl. at 3; 7.)[7]   The Plaintiff alleges that he met with City Councilman Cornell Murphy who forced Chief Yates to return the Plaintiff's money to him.  (Compl. at 8.)

The Plaintiff alleges that he has suffered physical and mental abuse, destruction of character, mental anguish, an emotional disorder, distress, loss of friends, family and job opportunities due to slander and libel.  He is seeking five million dollars in damages. (Compl. at 9.)

In their motion for summary judgment, the Defendants recite the facts as follows. On March 1, 2007, the WDPS was conducting a surveillance of a room at the Fairfield Motel.  For several hours, the Plaintiff and other people were seen entering a room and leaving after staying for only a few minutes.  (Defs.' Mem. Supp. Summ. J. Mot. at 2 and Ex. # 1 - Garrick's Aff. ¶ 2.)  Officer Westfall stated he observed drug paraphernalia in plain view through a window. Id. ¶ 1.  Based upon these observations, a search warrant was obtained.  (Defs.' Mem. Supp. Summ. J. Mot. at 2.)  However, prior to the execution of the search warrant, the Plaintiff left the motel in a car driven by Eisenhard.  *Id.*

Officer D.J. Wilson stopped Eisenhard for driving without headlights in the rain "in very close proximity to the motel."  *Id.*   During a search of Eisenhard, drugs were found in his pants.  *Id.*  However, Eisenhard indicated that the drugs belonged to the Plaintiff.

_____

[7]The undersigned notes that according to the South Carolina Department of Corrections website, the Plaintiff is currently serving a five year sentence for manufacturing or distributing crack cocaine, second offense.  (*See* www.doc.sc.gov.)  His sentence start date is listed as March 2, 2007.  *Id.*

*Id.* He stated that the Plaintiff had thrown a bag containing drugs at him when he was pulled over. (Defs.' Mem. Supp. Summ. J. Mot. at 2.) Eisenhard stated that he threw it back, but the Plaintiff tossed it back into his lap. *Id.* Eisenhard stated he then put the drugs down his pants. *Id.* Eisenhard was released and the Plaintiff was arrested and charged with PWID power cocaine, PWID crack cocaine, and two counts of PWID crack cocaine within close proximity of a school. (Defs.' Mem. Supp. Summ. J. Mot. at 3.)

## **APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## **DISCUSSION**

Liberally construing the Compliant, the Plaintiff alleges three civil rights claims stemming from his March 1, 2007, arrest: racial discrimination, illegal seizure, and false arrest or malicious prosecution. He also alleges numerous state law claims, including perjury, misconduct in office, kidnapping, endangerment, and slander. (*See generally* Compl. & Am. Compl.) The Defendants contend that the Plaintiff has failed to establish a violation of his constitutional rights and the named defendants are not vicariously liable.

6

Further, the Defendants contend they are entitled to qualified immunity.  The undersigned disagrees as discussed below.

**Illegal Search and Seizure Claims**

A traffic stop constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 810 (1996).  Accordingly, to be reasonable a traffic stop must be supported by probable cause that a traffic violation has occurred.  *Id.*  "If a police officer observes a traffic violation, he is justified in stopping the vehicle for long enough to issue the driver [the requisite warning or] citation and determine that the driver is entitled to operate his vehicle."  *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008), cert. denied, --- U.S. ----, 129 S.Ct. 943 (2009). The maximum acceptable length of a routine traffic stop cannot be stated with mathematical precision. Instead, the appropriate constitutional inquiry is whether the detention lasted longer than was necessary, given its purpose.  *See Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion).

Here, the commission of a traffic violation, driving without headlights in the rain, provided justification for the initial stop of the vehicle.  *Whren*, 517 U.S. at 810 (explaining "the decision to stop an automobile is reasonable where the police have probable cause

to believe that a traffic violation has occurred").[8]  However, the Plaintiff asserts that the officer improperly extended the traffic stop into an unconstitutional stop.

In order to extend the encounter with law enforcement beyond a traffic stop into an investigatory or *Terry*[9] stop, the officer must lawfully obtain consent or have "reasonable suspicion" that illegal activity is afoot.  *Id.* at 336 (explaining "[i]f a police officer wants to detain a driver beyond the scope of a routine traffic stop, . . . he must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place").

The Fourth Circuit has made clear, however, that "if the traffic stop becomes a consensual encounter, the *Terry* inquiry would not be employed, and the stop would instead be governed by the Supreme Court's analysis in *Florida v. Bostick,* 501 U.S. 429, (1991), because a consensual encounter does not trigger Fourth Amendment scrutiny." *United States v. Meikle*, 407 F.3d 670, 672 (4th Cir. 2005) (citation and internal quotation marks omitted).  Pursuant to *Bostick,* the question is whether the police conduct would have communicated to a reasonable person that the person was not free to refuse the officers' requests or otherwise end the encounter. This inquiry involves an objective analysis of the totality of [the] circumstances.  If a reasonable person would have felt free

---

[8]The undersigned notes that in the Complaint, the Plaintiff does not challenge the propriety of the initial traffic stop initiated by law enforcement.  However, in his response to the Defendants' Summary Judgment Motion, the Plaintiff for the first time questions the officer's motive for stopping the car.  (Pl.'s Mem. Opp. Summ. J. at 17.)

[9]*Terry v. Ohio,*  392 U.S. 1, 21 (1968).

to decline the officer's request or otherwise terminate the encounter, and the suspect freely gives consent to search at this point, there is no need to reach the issue of whether the initial stop was permissible under *Terry*.

When consent is not forthcoming, an officer may prolong a stop if he has reasonable suspicion of illegal activity. *Branch*, 537 F.3d at 336. Reasonable suspicion means there are "specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry v. Ohio,* 392 U.S. at 21. While the reasonable suspicion analysis is not rigid, some circumstances that, taken together, may be relevant to the analysis include the location of the stop, conduct of defendant during the stop, and other indications of criminal activity. *See, e.g., United States v. Mayo*, 361 F.3d 802, 806, 808 (4th Cir. 2004) (noting defendant's evasive or nervous behavior and presence in a high-crime area may be relevant to the reasonable suspicion analysis).

Voluntary consent to search is an exception to the Fourth Amendment prohibition of unreasonable searches and seizures. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973). Consent exists when circumstances indicate "the citizen would feel free to go, but stays and has a dialogue with the officer." *United States v. Weaver*, 282 F.3d 302, 310 (4th Cir. 2002). However, the subject remains seized for Fourth Amendment purposes if "in view of all of the circumstances surrounding the incident, a reasonable person would

have believed that he was not free to leave."  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

The court should consider the totality of the circumstances surrounding the consent in determining whether consent to search was freely and voluntarily given.  *Id.* at 227 ("[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.").  "In viewing the totality of the circumstances, it is appropriate to consider the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)."  *United States v. Lattimore,* 87 F.3d 647, 650 (4th Cir. 1996) (*citing United States v. Watson*, 423 U.S. 411, 424 (1976)).  It is also appropriate to consider whether the accused knew that he had the right to refuse consent, although the officers need not demonstrate that the accused knew of his right to refuse consent to prove that the consent was voluntary.  *Schneckloth,* 412 U.S. at 248-49; *United States v. Gordon,* 895 F.2d 932, 938 (4th Cir. 1990).

Turning to the allegations in this case and accepting them as true for the purposes of this summary judgment motion, the undersigned concludes that the initial stop of the car was appropriate as it is undisputed that a traffic violation had been committed.  Thus, the initial stop of the car did not violate the Plaintiff's Fourth Amendment Rights.  Further, in

regard to initially prolonging the traffic stop, the Plaintiff does not allege that he refused consent, and, in any event, there was likely reasonable suspicion based upon the scent which the officer stated he smelled. (Compl. at 6.)  The Defendants also contend that the officers knew about the drug surveillance at the Fairfield Inn and the Plaintiff's alleged connection.  (Defs.' Mem. Supp. Summ. J. Mot. at 4.)  However, in his opposition to the Defendants Summary Judgment Motion, the Plaintiff states that he has "never admitted to going and coming to or from a motel."  (Pl.'s Mem. Opp. Summ. J. Mot. Attach. # 2 ¶ 13.)  Viewing the evidence in the light most favorable to the Plaintiff, and drawing all reasonable inferences in his favor, there are genuine issues of material fact whether there was reasonable suspicion to detain him.

As for the initial search of the Plaintiff, the Plaintiff does not allege he refused to consent to this search.   He merely alleges Officer Wilson searched him.  (Compl. at 6.) However, in his memorandum opposing the Defendants' Summary Judgment Motion, the Plaintiff states that he was "ordered out of the vehicle" and searched.  (Pl.'s Mem. Opp. Summ. J. Mot. at 4.)  The Defendants contend that "clearly a search was appropriate at whatever time Plaintiff alleges one to have occurred."  (Defs.' Mem. Supp. Summ. J. Mot. at 5.)  The Defendants contend the car was searched with consent and the Plaintiff was patted down for the officer's safety during the search of the car.  Thus, there is also a genuine issue of material fact as to whether the officers obtained the Plaintiff's voluntary consent to be searched the first time based upon the totality of the circumstances.

The Plaintiff then alleges he was handcuffed by the Defendant Yates and searched a second time. (Compl. at 6.) Having found no contraband during the first search of the Plaintiff, Eisenhard, and the car, however, there is a question of fact as to whether the officers obtained the Plaintiff's voluntary consent to be searched a second time based upon the totality of the circumstances or whether the officers had voluntary consent or a reasonable suspicion at that point to continue the detention of the Plaintiff.

Furthermore, there is clearly a question of fact as to whether the officers violated the Plaintiff's Fourth Amendment rights when, after the officers did not find any contraband during the first and second searches, the Plaintiff was placed into a patrol car while handcuffed, removed from the scene of the traffic stop, and driven to the Fairfield Motel where he was searched a third time. The Defendants contend that "prior to transport a search would be appropriate for officer safety" and "a search incident to arrest was appropriate as well." (Defs.' Mem. Supp. Summ. J. Mot. at 5.) However, there is no evidence that the Plaintiff was in custody or had been arrested at his point for the PWID charges - clearly as this was prior to the discovery of the drugs on Eisenhard. Thus, this search could not be justified as a search incident to an arrest. Further, the Plaintiff had been searched twice and thus this search could not have been justified as one for weapons for the officers' safety.

Questions of material fact remain with respect to the voluntariness of the Plaintiff's consent or whether the officers had a reasonable suspicion to expand the traffic stop and

whether the Plaintiff voluntarily consented to the searches so that summary judgment on these claims is inappropriate at this time.

**Malicious Prosecution and False Arrest Claims**

"[T]here is no such thing as a '§ 1983 malicious prosecution' claim. . . . [Such a claim] is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution-specifically, the requirement that the prior proceeding terminate favorably to the plaintiff." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000). Allegations that law enforcement seized Plaintiff "pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a . . . claim alleging a seizure that was violative of the Fourth Amendment." *Id.* at 183-84. Therefore, the Plaintiff must not only show that his arrest was without probable cause, but that the state criminal proceedings terminated in his favor.

"'Probable cause,' for Fourth Amendment purposes, means 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir. 1992) (*quoting Michigan v. De Fillippo*, 443 U.S. 31, 37 (1979)). Two factors govern the determination of probable cause in any situation: "the suspect's conduct as known to the officer, and the contours of the offense thought to be

committed by that conduct." *Id.* Therefore, probable cause "could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id.*

The existence of probable cause is measured as of the moment of the arrest, not on later developments. *Beck v. Ohio,* 379 U.S. 89, 93 (1964). The validity of the arrest depends only on the existence of probable cause at the time of the arrest

In *Devenpeck,* the Supreme Court held that probable cause to arrest need not be based upon the offense invoked by the arresting officer. 543 U.S. at 153-56. In fact, under *Devenpeck,* the offense for which probable cause is established need not be even "closely related" to the offense invoked by the arresting officer. *Id.*

The fact that the Plaintiff was not convicted does not mean that the Defendant did not have probable cause to charge him with the offenses. Furthermore, the question is not whether there was actually probable cause, but whether an objective officer could reasonably have believed probable cause existed. *Gomez v. Atkins*, 296 F.3d 253, 261-262 (4th Cir. 2002). An officer is not liable where he could have reasonably believed there was probable cause for the arrest.

In his response to the Defendants' Summary Judgment Motion, the Plaintiff states what he believes was the motive for the alleged false arrest. (Pl.'s Mem. Opp. Summ. J. at 2.) He states that Linda Sylvia had called him on March 1, 2007, and told him that someone had told her husband, Don Sylvia, that the Plaintiff and Linda were having an

affair. *Id.* He states that Linda told him that the Defendants Yates, Garrick, and Westfall were Don's friends and that they were planning on locking up the Plaintiff to keep him away from her. (Pl.'s Mem. Opp. Summ. J. at 3.) However, an officer's improper motives are irrelevant for purposes of determining the existence of probable cause, *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1079 (8th Cir. 1990).

The Defendants contend that:

> the facts known to WDPS at the time of the arrest were that the Plaintiff had been involved in suspicious appearing activity in room 49 at the Fairfield Motel where it appeared that drug activity was taking place; the plaintiff had a history of selling drugs; people were coming and going from room 49 for several hours and making very short visits of just a couple of minutes; there was drug paraphernalia in the room; drugs were found on the driver of the car in which Plaintiff was a passenger; those drugs field tested positive for cocaine and crack cocaine; the driver of the car was known to WDPS and was not known to sell cocaine and crack cocaine; the driver of the car was known to WDPS and was known for his candor in past dealings; the driver of the car indicated that the drugs belonged to the Plaintiff, and he gave a written statement to that effect; there were drugs located in room 49 of the Fairfield Motel upon the execution of a search warrant shortly after Plaintiff left the premises on one of his many short trips.

Here, the Plaintiff was arrested for PWID drugs found on Eisenhard while Eisenhard was released. The undersigned concludes that a question of facts exists as whether an objective officer could reasonably have believed probable cause existed to arrest the Plaintiff for PWID the drugs found on Eisenhard. Accordingly, summary judgment should be denied at this time.

**Equal Protection Claims**

The Plaintiff alleges that the Defendants violated his equal protection rights by charging him, but releasing Eisenhard. (Pl.'s Mem. Opp. Summ. J. Mot. at 13.) He alleges that similarly situated persons should receive similar treatment. *Id.*

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The clause "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001) (*quoting Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated *and that the unequal treatment was the result of intentional or purposeful discrimination*." *Id.* (Empahsis added). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

The Plaintiff alleges that he was subject to disparate treatment because Eisenhard was not charged with any offense. Although the Plaintiff may be able to show that the officers in this case violated his Fourth Amendment rights, he has failed to provide any evidence that the officers did so on the basis of any discrimination and thereby violated his right to equal protection. The plaintiff does not allege any discriminatory purpose or that he is even a member of an identifiable group. The plaintiff makes the bare assertion of an

equal protection claim, but he does not allege sufficient facts in support of it. Although required to liberally construe a pro se complaint, this Court is not required to develop tangential claims from scant assertions in the complaint. *See Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985). Reviewing the allegations in the complaints, other than conclusory allegations, there is no evidence of discrimination on the behalf of the Defendants regarding the Plaintiff's arrest. *Papasan v. Allain,* 478 U.S. 265, 286 (1986)("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."). Accordingly, the Defendants should be granted summary judgment on the Plaintiff's equal protection claim.

**Defendants' Vicarious Liability**

The Defendants contend that they cannot be held vicariously liable for any violation for the Plaintiff's constitutional violations. Specifically, the Defendants contend that they are not liable because they did not actually affect the initial arrest of the Plaintiff and their mere presence and participation is not sufficient to give rise to individual liability. (Defs.' Mem. Supp. Summ. J. Mot. at 9.)

In order to establish personal liability against a defendant in a § 1983 action, the defendant must be personally involved in the alleged wrongs. *Monell v. Dep't of Soc. Serv.* 436 U.S. 658 (1978); *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir.1977). The Fourth Circuit has clearly held that the doctrine of respondeat superior does not apply in § 1983

claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding no respondeat superior liability under § 1983). However, a supervisory official can still be sued in an individual capacity under § 1983. See *Vinnedge v. Gibbs,* 550 F.2d 926, 926-29 (4th Cir.1977).

Here, it is undisputed that the Defendant Chief Yates was present at the initial traffic stop of the Plaintiff and Eisenhard. (Compl. at 6; Defs.' Mem. Supp. Summ. J. Mot. Ex. 4.) The Plaintiff alleges Chief Yates directed Officer Wilson to transport the Plaintiff and Eisenhard to another location, the motel. (Compl. at 3.) Further, while the Defendant Garrick avers in his affidavit that he was not present at the traffic stop (Defs. Mem. Supp. Summ. J. Mot. Ex. 1), the Plaintiff alleges Garrick searched him at the motel. (Compl. at 3.) Further, Garrick is listed as the prosecuting officer and is the affiant on the arrest warrant. Likewise, Tolbert avers that neither he nor Garrick participated in the traffic stop. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 2.) However, the Plaintiff alleges Tolbert searched Eisenhard and found the drugs on Eisenhard. (Compl. at 3.) Further, Tolbert is listed as the arresting officer on the incident report. (Pl.'s Mem. Opp. Summ. J. Mot. Attachs. 5 and 6.) The Plaintiff has alleged that the individual defendants were personally responsible for any of the alleged incidents. Thus, the Defendants should not be dismissed on this ground.

**Qualified Immunity**

The Defendants also contend that they are entitled to qualified immunity. In *Harlow v. Fitzgerald,* 457 U.S. 800 (1982), the United States Supreme Court held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

*Wiley v. Doory,* 14 F.3d 993 (4th Cir.1994) (internal citations omitted). Determining whether an official is entitled to qualified immunity generally requires a two-step inquiry. *See generally Pearson v. Callahan,* 555 U.S. ----, 129 S.Ct. 808 (2009). First, the court

must inquire whether the right allegedly violated was clearly established at the time of the alleged offense.

There is no question that at the time of this incident, the right to be free from an illegal seizure and false arrest absent probable cause was clearly established. Therefore, this court must determine whether the facts, taken in the light most favorable to the Plaintiff, indicate that a "police officer acting under the circumstances at issue reasonably could have believed that he had probable cause to arrest" the Plaintiff.  *Sevigny v. Dicksey,* 846 F.2d 953, 956 (4th Cir. 1988).

As discussed above, the undersigned concludes that there are genuine issues of material fact as to whether the officers violated the Plaintiff's Fourth Amendment rights and that these rights were clearly established so that an objectively reasonable officers would have known that they lacked the legal authority to detain the Plaintiff and to perform the searches without voluntary consent or a reasonable suspicion.  Summary judgment on qualified immunity grounds is not appropriate if there are genuine issues of material fact whether a constitutional violation occurred.  *Hildebrandt v. Ill. Dep't of Nat. Res.,* 347 F.3d 1014, 1038 n. 22 (7th Cir. 2003).  Accordingly, the Defendants are not entitled to summary judgment based on qualified immunity as a matter of law.

**State Law Claims**

To the extent that the Plaintiff alleges additional claims under state law, the undersigned recommends that the court decline to exercise supplemental jurisdiction over such claims. See 28 U.S.C. § 1367(c).

## CONCLUSION

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. # 51) be Granted in part and Denied in part and only the Plaintiff's state law claims should be dismissed.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

December 17, 2009
Greenville, South Carolina


**The plaintiff's attention is directed to the important notice on the next page.**