IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | | |
|---|---|---|
| Tyrone Kelly, #323630, | ) | C/A NO. 8:08-2147-CMC-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION and ORDER** |
| v. | ) | |
| | ) | |
| Winnsboro Chief Wayne Yates; | ) | |
| Winnsboro Sgt.Dane Garrick; and | ) | |
| Officer Joe Tolbert, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on Plaintiff's *pro se* complaint, filed in this court pursuant to 42 U.S.C. § 1983.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(d), DSC, this matter was referred to United States Magistrate Judge Bruce Howe Hendricks for pre-trial proceedings and a Report and Recommendation ("Report"). On December 17, 2009, the Magistrate Judge issued a Report recommending that Defendants' motion for summary judgment be granted in part and denied in part. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed objections to the Report on December 30, 2009; Defendants have filed no objections, and the time for doing so has expired.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the

Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The court reviews the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citation omitted).

After reviewing the record of this matter, the applicable law, the Report and Recommendation of the Magistrate Judge, and Plaintiff's objections, the court determines that the Report contains clear error in part of its discussion and analysis of Plaintiff's Fourth Amendment claims. Accordingly, the court declines to accept the portion of the Report which recommends denial of Defendants' motion for summary judgment regarding certain aspects of Plaintiff's Fourth Amendment claims. For the reasons stated below, Defendants Wayne Yates and Joe Tolbert are entitled to summary judgment and are dismissed from this action, and Defendant Dane Garrick's motion for summary judgment relating to Plaintiff's Fourth Amendment claim is denied. The court agrees with the Report's conclusions relating to Plaintiff's other asserted federal claim and, accordingly, adopts this portion of the Report. Therefore, for the reasons stated below, Defendants' motion for summary judgment is **granted except as to Defendant Garrick as noted below**.

As to Plaintiff's asserted state law claims, Defendants are also entitled to summary judgment on the claims for false arrest and/or malicious prosecution. As to any other asserted state law claims, they are dismissed without prejudice.

# I. SUMMARY JUDGMENT

## A. STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

In deciding a summary judgment motion, the court must look beyond the pleadings and determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986).  The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).  If the defendant carries its  burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and  admissions on file, that there is a genuine issue of material fact for trial.  *Celotex  Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).  An issue of fact is "genuine" if the evidence is such that a  reasonable jury could return a verdict for the plaintiff.  *Anderson*, 477 U.S. at 248.  An issue of fact concerns "material" facts only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law.  *Id.*  A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial.  *Celotex*, 477 U.S. at 322-23.  Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment.  *Anderson*, 477 U.S. at 251.

In this Circuit, verified complaints by *pro se* individuals are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge.  *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).  Plaintiff has filed a verified Complaint.  *See* Dkt. #1.  Additionally, in response to Defendants' motion for summary judgment, Plaintiff filed an opposition memorandum.  Dkt. # 55 (filed June 9, 2009).  Plaintiff indicates in one portion of this memorandum that the facts are "based on personal knowledge [of] the [P]laintiff."  Pl.'s Memo. [in Opp.] to Summ. J. (hereinafter "Pl.'s Opp. Memo.") at 3 (Dkt. # 55-1, filed June 9, 2009).  However, Plaintiff's memorandum is unaccompanied by affidavit or other sworn statement.

## B. FACTS

The facts in the light most favorable to Plaintiff are as follows. On March 1, 2007, Plaintiff was a passenger in a car driven by Nathan Eisenhard (Eisenhard) in Winnsboro, South Carolina.[1] The vehicle was stopped by Officer D.J. Wilson (Wilson) of the Winnsboro Department of Public Safety ("WDPS") for driving in the rain without operating the vehicle's headlights. Officer Wilson is not a defendant in this matter.

Chief of Police Wayne Yates (Yates) arrived at the scene of the traffic stop shortly thereafter. Wilson informed Eisenhard and Plaintiff that "he smelled a s[c]ent coming from the [car]." Compl. at 6 (Dkt. # 1, filed June 10, 2008). Eisenhard was directed to exit the vehicle and he was searched. *Id.* Plaintiff was also directed to exit the vehicle and Wilson "then searched [Plaintiff] and the [car]." *Id.* Defendants Dane Garrick (Garrick) and Joe Tolbert (Tolbert) did not participate in the traffic stop.

According to Plaintiff, the searches of Eisenhard, the vehicle, and Plaintiff yielded no contraband. Plaintiff and Eisenhard were then placed in handcuffs, searched again, and then seated in Wilson's patrol vehicle while Eisenhard's vehicle was again searched. Plaintiff alleges he and Eisenhard were then removed from the scene of the traffic stop by Wilson at the direction of Yates[2]

---

[1]There is some inconsistency in the record as to the spelling of this individual's last name. Based upon the statement submitted with Defendants' Motion for Summary Judgment, this person is correctly identified as "Nathan Eisenhard." *See* Dkt. # 51-4 at 2 (filed May 1, 2009).

[2]Plaintiff's response to Defendants' summary judgment motion indicates that he was "taken away by Chief Yates to a motel." Dkt. # 55-7 at 5, 6 (filed June 9, 2009). This contradicts Plaintiff's sworn assertion in his verified complaint. Therefore, the court disregards this contention.

and taken to the Franks Motel[3] where – Plaintiff asserts – law enforcement officers were conducting an unrelated drug bust.

Eisenhard was removed from the vehicle and taken into a room at the motel. Officers then returned with Eisenhard, and Plaintiff was removed from the patrol car. Plaintiff contends that during this time, Defendants Garrick and Tolbert were present and made rude and racial remarks to him. Plaintiff contends that Garrick searched him a third time with continued negative results. Compl. at 3.[4] Plaintiff maintains that Eisenhard was then searched again and was found to have crack and powder cocaine in his underwear. After discovery of the drugs in Eisenhard's underwear and based upon a statement given to police by Eisenhard, Eisenhard was released and Plaintiff was arrested and charged with four counts related to the recovered narcotics.

Neither party disputes that the drugs in question were recovered from Eisenhard. Moreover, Plaintiff does not dispute that Eisenhard told law enforcement that the drugs belonged to Plaintiff. Eisenhard gave authorities a written statement indicating that when Wilson initiated the traffic stop, Plaintiff threw the drugs to Eisenhard, who then threw the drugs back to Plaintiff. Plaintiff then tossed the bag back into his (Eisenhard's) lap. Eisenhard told authorities that he then put the drugs down his pants as Wilson approached the vehicle.

---

[3]The actual name of this motel is not clear in the record. Plaintiff alternately refers to it as the "Fairfield Inn"; Defendants call it the "Fairfield Motel." The warrants obtained March 2, 2007, identify the motel as the "Franks Motel." Therefore, for purposes of this order, the court refers to this location as the "Franks Motel."

[4]Plaintiff's pleadings are unclear as to who conducted this search. Plaintiff's filings alternately say that Garrick searched him, Compl. at 3, or "they" searched him, Compl. at 7, Attachment to Compl. at 2 ("the officers . . . searched him again") (Dkt. #1-1, filed June 10, 2008). *See also* "Applicate [sic] Statement," Attachment to Compl. at 1 (Dkt. #1-2, filed June 10, 2008). Because the only specific defendant identified by Plaintiff is Garrick, liability relating to this search, if any, could accrue only to Garrick.

Plaintiff was served with four warrants for his arrest relating to these charges on March 2, 2007. At the preliminary hearing held March 26, 2007, the magistrate dismissed these four charges based upon a finding of no probable cause. Plaintiff was subsequently arrested for, and pleaded guilty to, unrelated drug distribution charges, and is currently serving a sentence of imprisonment in the South Carolina Department of Corrections on these convictions.

In conjunction with their motion for summary judgment, Defendants provide the following additional facts, which Plaintiff does not dispute. On March 1, 2007, the WDPS was conducting surveillance of suspected narcotics trafficking activity at Room 49 at the Franks Motel. For several hours, officers observed various individuals entering and leaving Room 49. These individuals stayed for very short periods of time. Based upon these observations and the observation of drug paraphernalia in plain view through the window of Room 49, law enforcement officers sought and obtained a search warrant for Room 49.

Immediately prior to the execution of the warrant, Eisenhard was seen leaving the motel in a vehicle. Aff. of Dane Garrick ("Garrick Aff.") at ¶ 3 (Dkt. # 51-2, filed May 1, 2009). Officer Wilson thereafter stopped Eisenhard "across the street" from the motel, Aff. of Wayne Yates ("Yates Aff.") at ¶ 2 (Dkt. # 51-5, filed May 1, 2009), for driving in the rain without operating his vehicle's headlights. At the time of the traffic stop, Plaintiff was in Eisenhard's vehicle.

It is at this point that the parties' factual contentions diverge. Plaintiff denies in his verified complaint that he was ever at the motel at any time that day until he was taken there by law enforcement. Plaintiff maintains that at some point prior to the traffic stop, he (Plaintiff) had "jump[ed] in a grey Chevy Blazer driven by [Eisenhard]" Dkt. #1-2 at 1, only to shortly thereafter be involved in the traffic stop initiated by Wilson. Defendants contend that Plaintiff was observed

during the period of surveillance coming from and going to Room 49, and that he left the motel immediately prior to the execution of the search warrant in the car driven by Eisenhard. Garrick Aff. at ¶ 3.

Plaintiff declares that no evidence of illegal activity was found at the traffic stop, that he was unreasonably removed from the scene of the traffic stop and taken to the motel, and that the drugs were discovered in Eisenhard's pants once they were at the motel. Defendants' filings only indicate that *Wilson* "discovered" drugs on Eisenhard. *See*, *e.g.*, Yates Aff. At ¶ 2. While the implication of Defendants' filings is that the drugs were found by Wilson at the locus of the traffic stop, this is not clear in the record. Therefore, in the light most favorable to Plaintiff, the court finds for purposes of this motion only, that drugs were not discovered until after Plaintiff and Eisenhard were taken to the Franks Motel.

Plaintiff contends that in addition to subjecting him to unreasonable search and seizure on March 1, 2007, Defendants were involved in a "conspiracy" to falsely arrest Plaintiff when Garrick sought and obtained the warrants for his arrest on March 2, 2007. *See* Amd. Compl. at 2 (Dkt. # 9, filed July 15, 2009). Plaintiff also makes reference in his verified complaint to a litany of other state law claims, including slander, kidnapping, and "destruction of character." Compl. at 5.

## C. REPORT OF THE MAGISTRATE JUDGE

As noted above, the court declines to adopt the discussion and recommendation in the Report of the Magistrate Judge relating to certain aspects of Plaintiff's Fourth Amendment claims, both relating to two of the three searches which occurred on March 1, Plaintiff's seizure and arrest on March 1, and Garrick's involvement in the securing of the warrants for Plaintiff's arrest on March 2, 2007. The court finds that upon review for clear error, the Magistrate Judge erred in finding

disputed issues of material fact on several of Plaintiff's claims where there were none, and that even if a Fourth Amendment violation could be said to be attributable to Yates relating to Plaintiff's seizure and removal from the traffic stop, he is entitled to qualified immunity.

As relates to Plaintiff's asserted state law claims other than false arrest and malicious prosecution, the Report recommends that "that the court decline to exercise supplemental jurisdiction over such claims." Report and Recommendation ("Report") at 21 (Dkt. # 59, filed Dec. 17, 2009). However, because a viable Fourth Amendment claim remains, the court addresses these claims below in the section relating to state law claims. *See* Section III.B, *infra*.

## II. FEDERAL CLAIMS

### A. FOURTH AMENDMENT CLAIMS

The Fourth Amendment to the United States Constitution protects against "unreasonable" searches and seizures. U.S. Const. amend. IV. There is no dispute that warrants were not sought or obtained for Plaintiff's arrest until March 2, 2007. Therefore, for the various searches and seizure of Plaintiff on March 1 to have been reasonable, a valid exception to the warrant requirement must have applied.

### A.1. SEARCHES

As recited by Plaintiff, there were three (3) searches of his person by law enforcement officers on March 1, 2007. The first two were conducted at the traffic stop and the third was conducted once Eisenhard and Plaintiff had been transported to the motel.

The first search of Plaintiff was conducted by Wilson. *See* Compl. at 6. Any possible liability related to this first search would therefore accrue to Wilson. However, Wilson is not a defendant in this matter. It is well-settled that Plaintiff must include allegations against a specific

individual to properly allege § 1983 liability, and it must be affirmatively shown that the official charged acted personally in the deprivation of Plaintiff's rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Further, vicarious liability theories such as respondeat superior are not available in § 1983 actions. *Id.* Therefore, having failed to include Wilson in his complaint or amendment thereto, Plaintiff cannot complain of any constitutional violation relating to the first search.

Plaintiff contends in his verified complaint that he was searched a second time after he had been placed in handcuffs at the traffic stop. Compl. at 6. As noted above, however, Plaintiff failed to name Wilson as a defendant in this matter, and his verified complaint fails to identify who may have conducted this second search. *See* Compl. at 6 (Both Plaintiff and Eisenhard were "re[-]searched" and then placed in Wilson's patrol car); *see also* "Applicate [sic] Statement" at 1 (Dkt. #1-2, filed June 10, 2008) (stating that "we [were] both searched again" at the traffic stop).

Plaintiff contends in his Memorandum in Opposition to Defendants' Summary Judgment motion that both Wilson and Yates conducted the second search. *See* Pl.'s Opp. Memo. at 3-4. However, this contention is not submitted in an affidavit or declaration presented under penalty of perjury. Therefore, this assertion of Yates' involvement is insufficient to overcome Defendants' Summary Judgment motion. In this case, the "affidavit" upon which Plaintiff relies to overcome Defendants' summary judgment motion is his verified complaint. This "affidavit" contains an insufficient factual basis upon which to identify Yates as having been responsible for the second search.[5] Therefore, having failed to identify Yates in his verified complaint, Plaintiff cannot succeed on any claimed constitutional violation relating to the second search.

---

[5]As noted above, Plaintiff failed to name Wilson as a defendant; therefore, any possible liability relating to the second search could only accrue to Yates.

Plaintiff's contention is that the third search occurred at the motel and prior to the discovery of drugs on Eisenhard. Plaintiff maintains that this search was conducted by Garrick. Compl. at 3.

Garrick does not deny in his affidavit or elsewhere that he conducted this search. Garrick's only related averment is that he "did not place the Plaintiff under arrest on March 1, 2007." Garrick Aff. at ¶4.

Plaintiff had been placed in handcuffs at the traffic stop and taken "back across the street" to the motel. Yates Aff. at ¶ 3. Plaintiff had previously, according to his verified complaint, been searched twice. Thus, any issues relating to officer safety and or the maintenance of the status quo at the traffic stop had, at a minimum, dissipated by this time. Absent an exception to the warrant requirement, any further search of Plaintiff would have violated his Fourth Amendment rights. Defendants offer nothing in support of any such exception.

For these reasons, therefore, the court concludes that Plaintiff's verified complaint is sufficient to state a Fourth Amendment violation relating to this third search. The court also finds, as discussed below, that Garrick is not entitled to qualified immunity on this claim.

### A.2 QUALIFIED IMMUNITY – SEARCHES

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. Defendants seek summary judgment based on qualified immunity. Determining whether an official is entitled to qualified immunity generally requires a two-step inquiry. *See generally Pearson v. Callahan*, 555 U.S. ____ , 129 S. Ct. 808

(2009).[6] The court must determine whether, taken in the light most favorable to the plaintiff, the facts alleged show that the official's conduct violated a constitutional right. *Parrish v. Cleveland*, 372 F.3d 294, 301-02 (4th Cir. 2004). If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and the plaintiff cannot prevail. *Id*. If the facts do establish such a violation, however, the court must determine whether the right violated was clearly established at the time of the alleged offense. *Id*. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Id*. "If the right was not clearly established in the specific context of the case –that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted –then the law affords immunity from suit." *Id*. (citations and quotations omitted). "Fourth Circuit precedent is one source for determining whether the law was clearly established at the time of the alleged violation." *Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir. 1998); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (quoting *Jean v. Collins*, 155 F.3d 701, 709 (4th Cir.1998) (en banc)) ("In determining whether a right was clearly established at the time of the claimed violation, 'courts in this circuit [ordinarily]

---

[6]In *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the Supreme Court held that the test for determining qualified immunity requires that the court make a two-step inquiry "in proper sequence." In *Pearson*, however, the Court found that it is not necessary that the court review these steps in a particular order, as the inquiry process is left to the court's discretion. *Pearson*, 555 U.S. at ___, 129 S. Ct. at 818. Thus, this court may first inquire whether the right allegedly violated was clearly established at the time of the alleged offense. *Id*. If the right was not clearly established at the time of the alleged offense, then the court's inquiry need go no further. *Pearson* "does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id*., 555 U.S. at _____, 129 S. Ct. at 821.

need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose . . . .'").

If the material facts were undisputed, this court would apply clearly established law to determine whether Defendants are entitled to qualified immunity. However, "while the purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,' a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (quoting *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).

As noted above, a genuine issue of material fact exists as to whether Garrick searched Plaintiff a third time before Eisenhard was found in possession of drugs and implicated Plaintiff. If this is what occurred, or if no other circumstances justified an exception to the warrant requirement, Garrick would not be entitled to qualified immunity as he would clearly have "'fair warning' that [his] conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006). Any concern for officer safety or maintenance of the status quo was not an issue, as Plaintiff had been transported "back across the street" in a patrol vehicle in handcuffs, and had been (allegedly) searched twice prior to Garrick's search, with negative results. Defendants have failed to provide sufficient factual support for summary judgment on the issue of qualified immunity as to the claim against Garrick relating to this third search. Therefore, Defendant Garrick's motion for summary judgment is denied and the matter shall proceed to trial on this narrow issue.

**B. Seizure**

**B.1 March 1 Seizure**

The facts in Plaintiff's verified complaint construed in the light most favorable to Plaintiff also assert an alleged violation of his Fourth Amendment rights relating to his seizure and removal from the scene of the traffic stop.

As an initial matter, it is well established that the "[t]emporary detention of individuals during the stop of an automobile by the police . . . constitutes a 'seizure,'" no matter how brief the detention or how limited its purpose. *See Whren v. United States*, 517 U.S. 806, 809 (1996); *see also Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58. "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren*, 517 U.S. at 810. Plaintiff offers no evidence that the reason for Wilson's stop of Eisenhard's vehicle was pretextual, as Plaintiff presents no evidence that either a) it was not raining; or b) that Eisenhard was indeed operating the vehicle's headlights in the rain. Therefore, it appears that the initial stop of the vehicle was proper.[7]

To the extent that Plaintiff contends that he was "ordered" from the vehicle at the traffic stop, this removal from the vehicle was proper. Based upon the bright-line rule from *Maryland v. Wilson*,

---

[7]In his Complaint, Plaintiff does not challenge the propriety of the initial traffic stop initiated by Wilson. However, in his response to the Defendants' Summary Judgment Motion, Plaintiff for the first time questions Wilson's motive for stopping the car, indicating that law enforcement were intent on subjecting Plaintiff to "personal [sic] revenge." Pl.'s Opp. Memo. at 17. Supreme Court precedents "foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Whren*, 517 U.S. at 812-13 (noting further that "[s]ubjective intentions play no role" in analyzing automobile stops); *see also Macon*, 472 U.S. at 470-71. Thus, the inquiry into whether a police officer possessed "probable cause" or a "reasonable suspicion" of criminal activity is properly an objective one, focused solely on "specific and articulable" facts. *See*, *e.g.*, *Wardlow*, 528 U.S. at 123; *Terry*, 392 U.S. at 21-22.

519 U.S. 408 (1997), an officer may, as a matter of course, direct that a passenger in a lawfully stopped car exit the vehicle, 519 U.S. at 410. Therefore, Plaintiff being "ordered" to exit the vehicle did not run afoul of his Fourth Amendment rights. The question turns, therefore, on what purportedly occurred after Plaintiff was ordered from the vehicle.

### B.2 REASONABLE SUSPICION – SEIZURE

If a law enforcement officer deems it necessary to detain an individual beyond the scope of a routine traffic stop, he must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place. *See Florida v. Royer*, 460 U.S. 491, 500 (1983). "Thus, a prolonged automobile stop requires either the driver's consent or a 'reasonable suspicion' that illegal activity is afoot." *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008 ). A precise articulation of what constitutes "reasonable suspicion" is "not possible," *Ornelas v. United States*, 517 U.S. 690, 695 (1996).

The "reasonable suspicion" standard is necessarily "less demanding . . . than probable cause." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Indeed, in order to justify a *Terry* stop[8] a police officer must simply point to "specific and articulable facts which, taken together with rational inferences from those facts," *Terry*, 392 U.S. at 21, indicate "more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity," *Wardlow*, 528 U.S. at 124 (quoting *Terry*, 392 U.S. at 27 (internal quotations omitted)). Therefore, the quantum of proof necessary to demonstrate "reasonable suspicion" is even "considerably less than [a] preponderance of the evidence." *Wardlow*, 528 U.S. at 123.

---

[8]*Terry v. Ohio*, 392 U.S. 1 (1968).

Plaintiff asserts in his complaint that Wilson informed Eisenhard and Plaintiff said that "he smelled a s[c]ent coming from the [car]." Compl. at 6. Combined with the fact that the vehicle and driver had just departed the site of on-going narcotics activity, this admission by Plaintiff operates to provide Wilson with objectively reasonable suspicion that illegal activity was afoot as to Eisenhard and/or Plaintiff.

"As a general rule, officers conducting a *Terry* stop are authorized to take such steps as are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Leshuk*, 65 F.3d 1105, 1109 (4th Cir. 1995) (quotation and citation omitted).

Plaintiff contends he was handcuffed and placed in Wilson's patrol vehicle. Even assuming no drugs were found at the traffic stop, the court finds these steps taken by law enforcement were reasonably necessary for officer safety and to maintain the status quo. Wilson had stopped a vehicle which had just come from an area of suspected drug activity, and Plaintiff was in the vehicle. Wilson obtained Eisenhard's consent to search the vehicle. It was reasonable to place Plaintiff in Wilson's car while a more thorough search of Eisenhard's vehicle was conducted. Moreover, Plaintiff does not contest that it was raining, and placement in the patrol vehicle was also reasonable to provide Plaintiff shelter from the rain while the search of the car was conducted.

As to Plaintiff's removal from the scene of the traffic stop, in *Florida v. Royer*, 460 U.S. 491, 500 (1983), the Supreme Court held that "investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Royer*, 460 U.S. at 500. To this end, the Supreme Court found that an officer may not move a suspect from one location to another during an investigatory detention unless a "legitimate law

enforcement purpose" supports such a move. *Royer*, 460 U.S. at 505. As Yates was the only defendant named in the verified complaint who was present at the traffic stop, any supposed liability for this removal could only accrue to him.

Whether or not Plaintiff admits to being at the motel, Plaintiff was found in a vehicle which had just come from the scene of an ongoing narcotics investigation. *See* Yates Aff. at ¶ 2 (Plaintiff was taken "back across the street" to the motel). Additionally, whether the information was accurate or not, Yates believed Plaintiff was involved in the suspected illegal activity at the motel. *Id*. at ¶ 3 ("Information from our narcotics officers indicated that Tyrone Kelly had been under observation at the Fairfield Motel for suspected drug activity."); *See also* Aff. of Joe Kenneth Tolbert ("Tolbert Aff.") at ¶ 4 (Dkt. # 51-3, filed May 1, 2009) ("I was one of the officers in the room next to Tyrone Kelly."); Garrick Aff. at ¶ 2 ("Kelly had been seen coming and going from [R]oom 49 at the motel."). Therefore, even if drugs were not found at the site of the traffic stop and Plaintiff was "transported from the traffic stop back across the street to the Motel during the continued investigation[,]" Yates Aff. at ¶ 3, such removal from the scene was reasonable, as the completion of the officers' investigation was a legitimate law enforcement purpose.

Therefore, for these reasons, the court finds that Plaintiff has failed to establish any genuine issue of material fact relating to the alleged unreasonable seizure by Defendant Yates. Accordingly, Defendants are also entitled to summary judgment on any Fourth Amendment claims relating to alleged unreasonable seizure and removal from the traffic stop.

### B.3  QUALIFIED IMMUNITY – SEIZURE

Even if this court were to find that Defendant Yates violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure based on his removal from the site of the traffic stop, Yates would still be entitled to qualified immunity on this claim.

There is no clearly established federal law which prohibits moving a suspect to another location during an investigative detention for the legitimate law enforcement purpose of further investigation.  *See Florida v. Royer*, 460 U.S. 491, 505, (1983) (noting that an officer may move a suspect during a *Terry* investigation if moving her serves a "legitimate law enforcement purpose" and leaving undefined the scope of a "legitimate law enforcement purpose").  Because *Royer* left open the question of the scope of the law enforcement purpose that can support moving a suspect, this court cannot say that it was clearly established that an officer could not move an individual to a nearby location during an ongoing investigatory stop.  *Cf. United States v. Manbeck*, 744 F.2d 360, 377-78 (4th Cir. 1984) (finding no Fourth Amendment violation when officers moved an individual from his car to the patrol car for an investigatory detention due to legitimate safety concerns). Therefore, Yates is be entitled to qualified immunity on this claim.

### C.  ARREST AND PROBABLE CAUSE

Plaintiff contends in his verified complaint that Defendants lacked probable cause for his arrest and that the warrants obtained March 2 violated his rights because they were lacking in probable cause.  For the sake of brevity, the court notes that the discussion of probable cause in this section relates to both Plaintiff's claimed violation of Fourth Amendment rights and his state law claims for false arrest and malicious prosecution.

**C.1. REPORT OF THE MAGISTRATE JUDGE**

The Report of the Magistrate Judge recommends that Defendants' motion for summary judgment be denied as "a question of facts [sic] exists as whether an objective officer could reasonably have believed probable cause existed to arrest" Plaintiff. Report at 15 (Dkt. # 59, filed Dec. 17, 2009). Regardless of whether Plaintiff is attempting to vindicate a violation of his rights under § 1983 or via state law claims, for the reasons stated below, the court finds that the Magistrate Judge committed clear error in finding that a genuine issue of material fact existed on whether an objectively reasonable officer could have believed probable cause existed for Plaintiff's arrest. Therefore, the court declines to adopt the Report's discussion and conclusion in this section.

**C.2 ARREST – MARCH 1**

Even presuming Garrick placed Plaintiff under arrest on March 1, the court finds that Plaintiff has failed to satisfy his evidentiary burden in responding to Defendants' summary judgment relating to the issue of probable cause.

"The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996). "'Probable cause,' for Fourth Amendment purposes, means 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992) (quoting *Michigan v. De Fillippo*, 443 U.S. 31, 37 (1979)). Two factors govern the determination of probable cause in any situation: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Id.*

Therefore, probable cause "could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id*.

The facts and circumstances within officers' knowledge were that officers believed that they had observed Plaintiff in and around what was believed to be illegal narcotics activity in Room 49 of the Fairfield Motel. *See* Tolbert Aff. at ¶ 4 ("I was one of the officers in the room next to Tyrone Kelly."); Garrick Aff. at ¶ 2 ("Kelly had been seen coming and going from [R]oom 49 at the motel."). Additionally, Eisenhard gave a written statement indicating that the drugs belonged to Plaintiff. *See* Exhibit 3 to Defs. Memo. in Supp. of Summ. J. (Dkt. # 51-4, filed May 1, 2009). Officers had previous dealings with both Plaintiff and Eisenhard. "Mr. Eisenhard was [ ] known to WDPS and was not known to sell cocaine and crack cocaine. While he [ ] had a record, Mr. Eisenhard has always been known to be cooperative and candid with WDPS." Yates Aff. at ¶ 4.

The court finds that a reasonable officer would believe that probable cause existed for Plaintiff's arrest, and therefore this seizure on March 1 did not violate Plaintiff's Fourth Amendment rights or provide the basis for a state law claim of false arrest.[9] Accordingly, Plaintiff has failed to overcome Defendants' motion for summary judgment relating to both a § 1983 claim and state law claim for false arrest relating to his arrest on March 1.[10]

---

[9]A claim that a warrantless arrest is not supported by probable cause constitutes a cause of action for false arrest as opposed to malicious prosecution. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). Because this court finds that a reasonable officer would find that probable cause existed for Plaintiff's arrest, his state law claim for false arrest necessarily fails.

[10]Defendant Tolbert avers in his affidavit that Plaintiff "was prohibited from being on the motel's property." Tolbert Aff. at ¶ 2. If true, Plaintiff's arrest on March 1 was valid even without the drugs having been found. An arrest is valid if "based on the facts known to the officer, objective probable cause exist[s] as to *any* crime." *United States v. McNeill*, 484 F.3d 301, 311 (4th Cir.

### C.3 MARCH 2 WARRANTS

To the extent Plaintiff makes either a federal claim or a state common law claim of malicious prosecution[11] relating to the issuance of the warrants on March 2, either would turn on the facial validity of the warrants. Accordingly, to succeed on either claim, Plaintiff must prove that Garrick "deliberately or with a reckless disregard for the truth made material false statements in his affidavit, or omitted from the affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller v. Prince George's County Md.*, 475 F.3d 621, 627 (4th Cir. 2007) (internal quotations and citations omitted). "Reckless disregard" can be established by evidence that an officer acted "with a high degree of awareness of [a statement's] probable falsity," that is, "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (internal quotation marks omitted).[12]

---

2007) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). *See also Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."). However, Defendants provide no evidence to support this assertion, and the court, therefore, may accord it no weight.

   [11]"[A]llegations that an arrest made pursuant to a warrant was not supported by probable cause . . . are analogous to the common-law tort of malicious prosecution." *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998) (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181-82 (4th Cir. 1996)).

   [12]To assert a state law claim for malicious prosecution, Plaintiff must show (in addition to a lack of probable cause) that Defendants instituted judicial proceedings (either criminal or civil) with malice and that the proceedings terminated in his favor. *Guider v. Churpeyes, Inc.*, 635 S.E.2d 562, 566 (S.C. Ct. App. 2006) (citing *Parrott v. Plowden Motor Co.*, 143 S.E.2d 607, 608 (S.C. 1965)).

"It is well-established that a false or misleading statement in a warrant affidavit does not constitute a Fourth Amendment violation unless the statement is 'necessary to the finding of probable cause.'" *Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir. 1994) (quoting *Franks v. Delaware*, 438 U.S. 154, 156 (1978)). "Moreover, in order to violate the Constitution, the false statements or omissions must be 'material,' that is, 'necessary to the [neutral and disinterested magistrate's] finding of probable cause.'" *Miller*, 475 F.3d at 628 (quoting *Franks*, 438 U.S. at 155-56). To determine a statement's materiality, this court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789. If the "corrected" warrant affidavit still establishes probable cause, no civil liability lies against the officer.

The probable cause statements on the warrants indicate that "there is probable cause to believe that . . . [d]uring a traffic stop . . . the [Plaintiff] did hand the driver [substances believed to be drugs]." There is nothing materially false about these statements, as this is what Eisenhard indicated in his written statement. There is no statement contained in the warrants' affidavit relating to what Garrick did or did not believe about who committed the crime; therefore, there is no material statement to excise in this regard.

Therefore, as relates to this alleged violation of either Plaintiff's Fourth Amendment rights or a state law claim for malicious prosecution regarding the warrants issued March 2, Defendants are entitled to summary judgment on these claims.

.   **D. REMAINING FEDERAL CLAIMS**

**D.1 EQUAL PROTECTION**

The Report of the Magistrate Judge recommends that Plaintiff's claim for violation of Equal Protection under the Fourteenth Amendment should be dismissed. Plaintiff has objected.

For the reasons stated by the Magistrate Judge, with which the court agrees, Defendants should be granted summary judgment on this claim.

### D.2 SECTION 1983 CONSPIRACY

Plaintiff asserts that Defendants were involved in an alleged "conspiracy" to violated his civil rights. To the extent the complaint asserts a claim for conspiracy to violate his rights under the Constitution or federal law, Plaintiff must present evidence that the Defendants acted in concert and that some overt act was done in furtherance of the conspiracy which resulted in deprivation of a constitutional right. *See Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992). While he need not produce direct evidence of a meeting of the minds, Plaintiff must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective. See *id*. at 576-77; *Abercrombie v. City of Catoosa, Okl*, 896 F.2d 1228, 1230-31 (10th Cir. 1990); *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir.1983). In other words, to survive a properly supported summary judgment motion, Plaintiff's evidence must, at least, reasonably lead to the inference that Defendants positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan. This Plaintiff has not done. Therefore, Defendants are entitled to summary judgment on this cause of action, and it is dismissed with prejudice.

### D.3 OTHER FEDERAL CLAIMS

Plaintiff's verified complaint makes reference to a litany of other purported constitutional violations. *See* Compl. at 5. While this court is required to liberally construe *pro se* complaints, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on

which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d

1274, 1278 (4th Cir. 1985). Therefore, to the extent Plaintiff asserts other claimed violations of the Constitution or federal law, Plaintiff has failed to meet his evidentiary burden to proceed further with these claims, and they are, to the extent they are properly asserted, dismissed with prejudice.

### III. STATE LAW CLAIMS

#### A. MALICIOUS PROSECUTION AND FALSE ARREST CLAIMS

As noted and discussed above, Defendants are entitled to summary judgment on Plaintiff's state law claims for false arrest and malicious prosecution. Therefore, these causes of action are dismissed with prejudice.

#### B. OTHER STATE LAW CLAIMS

To the extent Plaintiff asserts other claimed violations of state law, Plaintiff has failed to meet his evidentiary burden to proceed further with these claims, and they are, to the extent they are properly asserted, dismissed without prejudice.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment as to Plaintiff's federal claims is **granted in part and denied in part**. Defendants Yates and Tolbert are dismissed from this action with prejudice. The only remaining federal claim relates to the third search conducted by Garrick.

As to Plaintiff's state law claims for false arrest and malicious prosecution, all Defendants are entitled to summary judgment on these claims, and they are dismissed with prejudice. Any remaining state law claims are dismissed without prejudice.

This matter is set for trial during the court's April 2010 term of court, which begins April 29, 2010. A pretrial conference is scheduled in this matter on **Tuesday, April 13, 2010, at 2:00 p.m.** in Courtroom 2 of the Matthew J. Perry, Jr., United States Courthouse, 901 Richland Street, Columbia, South Carolina 29201.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON McGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 29, 2010